RECEIVED

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

2008 APR -2 A 10 05

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

Mark Alan Byrd 142721 )
Full name and prison number of )
plaintiff(s) )
 )
 )
 v. )
 )   CIVIL ACTION NO. 2:08 CV-244-MHT
Warden K. Jones; Dept. Warden S. Giles; )   (To be supplied by the Clerk of the
 )      U.S. District Court)
CO Willie Byrts; CO J. Pettway, )
 )
Sgt. Henry Ruffin; CO Michael Holcey )
 )
Allen K. Valaer, et al )
Name of person(s) who violated )
your constitutional rights. )
(List the names of all the persons) )

I.    PREVIOUS LAWSUITS

A.    Have you begun other lawsuits in state or federal court dealing with the same or
similar facts involved in this action?    Yes ( )   No (X)

B.    Have you begun other lawsuits in state or federal court relating to your
imprisonment?    Yes ( )   No (X)

C.    If your answer to A or B is yes, describe each lawsuit in the space below. (If there
is more than one lawsuit, describe the additional lawsuits on another piece of
paper, using the same outline).

1.    Parties to this previous lawsuit
Plaintiff(s) _N/A_____

Defendant(s) _____

2.    Court (if federal court, name the district; if state court, name the county)
_N/A_____

3.    Docket No. _N/A_____

4.    Name of Judge to whom case was assigned _N/A_____

Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending? _____N/A_____

6. Approximate date of filing lawsuit _N/A_

7. Approximate date of disposition _N/A_

II. PLACE OF PRESENT CONFINEMENT _Bullock County Corr. Facility Mental Health Unit_

PLACE OR INSTITUTION WHERE INCIDENT OCCURRED _Bullock Correctional Facility and BCF Mental Health Unit_

III. NAME <u>AND ADDRESS</u> OF INDIVIDUAL(S) YOU ALLEGE VIOLATED YOUR CONSTITUTIONAL RIGHTS.

| | NAME | ADDRESS |
|---|---|---|
| 1. | Warden Kenneth Jones | Bullock Corr. Facility Union Springs, AL |
| 2. | Dept. Warden S. Giles | Bullock Corr. Facility Union Springs, AL |
| 3. | CO Willie Byrts | Bullock Corr. Facility, Union Springs, AL |
| 4. | Sgt. Henry Ruffin | Bullock Corr Facility Union Springs, AL |
| 5. | CO Michael Hicey | Bullock Corr. Facility Union Springs, AL |
| 6. | CO J. Pettway | Bullock Corr. Facility Union Springs, AL 36089 |
| | Allen Valaer | East AL Medical Center 721 N. 20th St. B/17 Opelika, AL 36801 |

IV. THE DATE UPON WHICH SAID VIOLATION OCCURRED _From Feb 11, 2008 through March 8, 2008_

V. STATE BRIEFLY THE GROUNDS ON WHICH YOU BASE YOUR ALLEGATION THAT YOUR CONSTITUTIONAL RIGHTS ARE BEING VIOLATED:

GROUND ONE: _Conspiracy to violate due process rights and equal protection rights_

STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND. (State as best you can the time, place, manner, and person involved).

_(SEE Attached Sheet)_

-2-

GROUND TWO: _Racial discrimination_

SUPPORTING FACTS: _All persons involved in the complete disciplinery process are black. The plaintiff is white. The defendants acted with deliberate indifference because of plaintiff's race._

GROUND THREE: _____

SUPPORTING FACTS: _____

VI.    STATE BRIEFLY EXACTLY WHAT YOU WANT THE COURT TO DO FOR YOU. MAKE NO LEGAL ARGUMENT. CITE NO CASES OR STATUTES.
_Issue a declatory judgement against the defendants and award plaintiff punitive, nominal and compensatory damages, individually and respectively, in the amount of $5,000 (five thousand) from each defendant for each violation_

_Mark Byrd_
Signature of plaintiff(s)

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on _March 29, 2008_
                    (date)

_Mark Byrd_
Signature of plaintiff(s)

# GROUND I

On February 11, 2008, at 12:46am, the plaintiff submitted a urine specimen to CO Holcey for drug testing. Later that day, CO J Pettway allegedly tested the specimen and posted a positive result for the presence of THC.

On February 12, 2008, the specimen was transported to Forensic Toxicology Lab, 121 N. 20th St. Bldg. 17, Opelika, AL 36801, for confirmation testing. On February 14, 2008, at 8am, the presence of THC was allegedly confirmed by Allen K. Valaer.

Based on these test results, disciplinary action was initiated against the plaintiff.

On February 23, 2008, the plaintiff was served with a copy of the disciplinary by CO Mardis Howard. At that time, the petitioner properly notified CO Howard that he wanted witnesses. The proper notation was made on the disciplinary report that plaintiff requested CO J. Pettway and Allen K Valaer as witnesses. These are the two people who allegedly tested the specimen.

On March 2, 2008, at 1:37am, a hearing was convened in regard to the charge against plaintiff. Present at the hearing were the plaintiff, CO Holcey and CO Willie Byrts who acted as the hearing officer. Also present was Sgt. Henry Ruffin. Sgt. Ruffin was not a witness, not the hearing officer

nor was he the arresting officer.

The plaintiff prepared a written statement and questions to be asked of his witnesses and the arresting officer. This was all presented to CO Byrts prior to the hearing.

Prior to the commencement of the hearing in the presence of CO Byrts (the hearing officer) Sgt. Henry Ruffin, who had no right to be present at the hearing nor especially to decide any of the issues, informed plaintiff that his witnesses would not be present because he "wasn't going to bother them this time of night." Sgt. Ruffin further questioned the plaintiff about his defense to the charges which included the challenging of the procedure followed in the collection, handling and testing of the specimen. The plaintiff and Sgt. Ruffin argued about this issue for about 15 minutes. Finally, CO Byrts, the hearing officer, stated indirectly that the plaintiff was going to be guilty anyway so it didn't matter about the witnesses.

The hearing consisted of the arresting officer giving no testimony, no witnesses being called, plaintiff's prepared questions for the arresting officer not being asked, the plaintiff not being allowed to read his prepared statement and Sgt. Ruffin being present during the entire hearing

2

giving his opinions and input to CO Byrts, the hearing officer. Even at the conclusion of the hearing, when the hearing officer announced his recommended sanctions of 45 days loss of visitation, phone and canteen privileges, Sgt. Ruffin called the hearing officer out into the hallway and told him to "go ahead and give him 45 days segregation and take his good time." The plaintiff heard this and questioned the fairness of it. Sgt. Ruffin told the plaintiff to shut up and that his conversation was none of plaintiff's concern.

After the conversation with Sgt. Ruffin, the hearing officer, (CO Byrts), added 45 days segregation and loss of 6 months good time to his sanctions. Sgt. Ruffin improperly influenced CO Byrts' decisions by directly giving his input and opinions before, during and after the hearing and by his mere presence because Sgt. Ruffin is CO Byrts' direct supervisor.

The following sanctions were ultimately recommended by CO Byrts:

45 days loss of store, visitation, phone use privileges, remove 6 months good time and confine to segregation for 45 days.

The plaintiff wrote a letter to Warden Jones

3

asking him to speak with plaintiff about everything that had occurred prior to the disciplinary being approved. Warden Jones never responded to the letter.

On March 7, 2008, the disciplinary and sanctions were approved by Deputy Warden S. Giles. The plaintiff was served with the final approved copy of the disciplinary on March 8, 2008, at 12:20am by CO Napoleon Floyd.

The plaintiff asserts that numerous due process, administrative regulation and ethnic violations have occurred before, during and after the disciplinary process that have deprived him of a viable liberty interest and unjust punishment, along with hardship, was endured as a direct result.

These violations occurred while all defendants acted under color of state law.

Attached hereto is a brief in support of the issues.

4

## GROUND II

The plaintiff contends that serious ethnic violations occurred during the whole disciplinary process, especially on the part of Sgt. Henry Ruffin and CO Willie Byrts.

The plaintiff has done a substantial amount of time at Bullock prison and has personally witnessed many instances of racism directed toward white inmates by the overwhelmingly majority black staff. There are about 7 white officers throughout Bullock prison spread across three shifts. All of the rest are black to include the warden, deputy warden, both captains, all but one lieutenant and all sargeants.

The plaintiff has been to Bullock on four separate occasions over the last 10 years. None of the instances of racism were ever directed toward the plaintiff to an extant that they could be legally addressed until now. It has to be stopped!

The flagrant disregard for petitioner's constitutional rights and established DOC procedure during the disciplinary process clearly shows that everyone involved did what they wanted in spite of what the law mandates.

The plaintiff has already laid out the behaviors of Sgt. Henry Ruffin and CO Willie Byrts. Both of them are black. CO Michael

Holcey, the arresting officer, is also black. The disciplinary hearing was held around 2am in a secluded area of the mental health unit. The plaintiff felt extremely intimidated and frightened by the black officers.

There was not one single white person involved in this disciplinary process. Every employee involved the slightest bit, from the serving officer all the way to the warden, deputy warden and back down to the officer who served the final copy are black.

The plaintiff submits that all of these persons conspired to violate the constitutional rights of the plaintiff during the disciplinary process. This type of behavior, especially on an official, professional level, cannot be tolerated.

## LEGAL ARGUMENT

The plaintiff will attempt to present this legal argument as clear, concise and brief as possible without limiting the court's ability to understand the issues presented.

Items 1-10, listed below, pertain to procedure, to include due process, mandated in Alabama Dept. of Corrections Administrative Regulation 403. (AR403)

1. First and foremost, the plaintiff is classified as a "mental health inmate" and that calls for special provisions to be followed during the disciplinary process. One major provision is that a mental health staff member must complete a Mental Health Consultation prior to the hearing. (See Exhibit E ). Step 3 of this form is to be completed by the mental health staff. It was completed by Yvonne S. Stinson, MS, MHP. MHP Stinson answered "yes" to the question of whether mental health issues affected plaintiff's behavior at the time of the charge and described the issues as follows:

"Inmate suffers Ē Bipolar Disorder diagnosis which is indicator of depressed moods/mood swings/anger & behavior."

Further, MHP Stinson answered "yes" as to whether mental health staff would be present at the disciplinary hearing to provide input.

Step 2 and Step 4 of this form is for the hearing officer, CO Byrts, to complete. He failed to answer any of the questions and simply signed Step 4.

There was no mental health staff present at the hearing to provide input.

All of this violates para. I.D., and other paras. relating to mental health inmates, contained AR403.

2. The plaintiff requested witnesses to be present in accordance with AR403 para. II.C. The plaintiff also presented to CO Byrts, prior to the hearing, written questions for the witnesses and the arresting officer, CO Hokey, in accordance with AR403 para. II.D. (See Exhibits G, H & I).

The witnesses requested were the persons who allegedly tested the urine specimen at the respective locations. Their answers to questions were very relevant to plaintiff's defense; especially in light of the fact that no one testified at the hearing and the only finding of fact was the results of the alleged tests.

AR403 para. VI B. states that as the names of witnesses desired by the accused have been obtained during notification they are required to appear unless excluded for specific reasons by the hearing officer. It further states that the reasons for not calling any witness requested by an inmate will be explained to the inmate and item 18 on

2

Form 225B (Exhibit A pg. 2) must be completed. This is also stated in AR403 para. IV.I.

AR403 para. III.F. states, in part, that the hearing officer will determine if the witnesses' testimony could possibly be relevant and that the hearing officer will be responsible for having any employees and inmates called as witnesses present at the hearing. And para. II C states that an inmate must be permitted to call a reasonable number of reasonably available witnesses.

The plaintiff was not allowed to call any witnesses and no reasons were given by the hearing officer as to why the witnesses were not called (See Exhibit A pg 2 line 18).

This is a direct violation of due process and AR403.

3. AR403 para IV.G. provides that the hearing officer will allow the inmate to read a prepared statement and add to his oral testimony if the inmate desires.

The plaintiff prepared a statement but was not allowed to read it (See Exhibit F). This is clearly evidenced by the hearing officer's entry on line 16 of the disciplinary report. (See Exhibit A pg. 2). This entry is merely a recitation of the plaintiff's plea.

The plaintiff was not allowed to read his statement or give oral testimony. This, also, is

3

a direct violation of due process and AR403.

4. AR403 para. IV H mandates that the hearing officer will ask questions prepared by the inmate to respective witnesses and write down the answers.

The hearing officer did not ask the questions prepared for the arresting officer, the only witness present (see Exhibit I).

This is a clear violation of due process and AR403.

5. AR403 para. IV.F. states that the hearing officer must hear the evidence brought by the arresting officer and that affidavits and written statements should not be used in lieu of testimony...

The only evidence that was relied on was the two copies of the alleged tests (See Exhibits B and C; also Exhibit A pg 2 lines 19 and 20). No one testified to the validity of the tests and the plaintiff's whole defense, which he was not allowed to present, centered around improper chain of custody during the testing process.

Lack of proper evidence cannot be allowed. It is a clear violation of due process and AR403.

6. AR403 para III B mandates that personnel who have formed an opinion of innocence or guilt

4

may not serve as a hearing officer. It is clear from the aforementioned remarks made by CO Byrts prior to the hearing that he had a preformed opinion of plaintiff's guilt.

This violates due process and AR403.

7. AR403 para II B mandates that an inmate be permitted to testify at the hearing. It is clear from examining plaintiff's written statement (Exhibit F) and line 16 on the disciplinary report (Exhibit A pg 2) that the plaintiff was not allowed to testify.

This violates due process and AR403.

8. The actions described within this petition and attached brief by defendants were carried out intentionally and with deliberate indifference and malice aforethought. A complete disregard for plaintiff's constitutional right to due process and equal protection occurred as a direct result thereof.

9. The aforementioned actions by Sgt. Henry Ruffin deprived the plaintiff of his right to an impartial hearing and an opportunity to present witnesses and be heard.

10. Alabama Dept. of Corrections Administrative Regulation 440 (AR440) mandates and governs the

procedures for collecting, handling, storage and testing of urine specimens.

The petitioner had prepared a written statement to present at the disciplinary hearing that specifically addressed gross violations of the handling of the specimen in regard to the chain of custody (see Exhibit F pg. 1 and pg. 2).

AR 440 para C(1) states that an ADOC Form 440-A "Chain of Custody" MUST always be maintained with each specimen. It also states that the chain begins with the inmate providing the specimen, next the collecting officer and then the transporting officer or the officer operating the test equipment. Further, this chain of custody should be kept to a minimum to prevent possible contamination.

A copy of the form 440-A was provided to the petitioner with the service of the disciplinary (See Exhibit D). The places for the appropriate signatures, dates and time appear at the bottom of the form. The only action shown for the specimen are from the plaintiff to CO M. Holcey on February 11, 2008, at 12:46am and from CO M. Holcey to the 3rd shift drug cabinet on February 11, 2008, at 1:30am. There is no other action shown as far as anyone handling or moving the specimen past this time and date. According to the required form the specimen was placed in the 3rd shift drug box and has not been handled since.

However, a report has been produced by CO J Pettway from the Bullock Correctional Facility Drug Lab showing that he tested the specimen on February 11, 2008, at 9:23am (See Exhibit C). CO J Pettway's signature appears nowhere on the chain of custody.

Further, a report has been produced from Forensic Toxicology Lab in Opelika by Allen Valaer showing that he tested the specimen on February 14, 2008, at 8am (See Exhibit B). Allen Valaers signature appears nowhere on the chain of custody.

The plaintiff submitted a specimen to CO M. Holcey and CO M. Holcey placed it in the 3rd shift drug box. This much is documented on the chain of custody. After that one can only assume that the specimen was removed from the drug cabinet by someone at some point and further transported all the way to Opelika by someone. There is not even indication of who may have received or handled the specimen in Opelika. Further, there is no indication of where the specimen went from there. No one can say with any certainty what happened to the specimen or who may have handled it after placing it in the drug box or, if indeed, whether or not it was ever removed from the drug box. As a matter of fact, AR440 para 4(b) states that the tester will not test the specimen if the chain of custody appears to have been broken.

7

AR440 para E(b) states that the appropriate identification items from Form 440-A and the specimen container will be transferred to the off-site ADOC contracted independent laboratory specimen package including the chain of custody form.

The chain of custody is very important and without proper chain of custody no one knows with any certainty who all may have had access to or handled the specimen. The integrity of the specimen cannot be relied upon. Therefore, the results of any tests involving the specimen would be unreliable.

## CONCLUSION

The plaintiff submits that based on the foregoing arguments and facts that it is clear that no evidence was presented to support the finding of fact at the disciplinary hearing, that numerous due process violations occurred during all stages of the disciplinary process, that ethnic violations occurred based on race and that the disciplinary, collection and testing process were so ~~flawed~~ flagrantly flawed that the plaintiff was deprived of any hint of fairness.

Further, all defendants acted with deliberat

8

indifference and total disregard for plaintiff's constitutional rights. The defendant's acted conspiratorily in unison and individually. All defendants were aware, or should have been aware, of the violations occurring and not only did not attempt to stop the violations, some, namely Sgt. Ruffin, CO W. Byrts, Warden K. Jones and Deputy Warden S. Giles, furthered the violations after being made aware by the plaintiff.

The plaintiff has suffered irreparable injury as a direct result of defendant's actions and, therefore, is entitled to a judgement in his favor with damages (punitive, nominal and compensatory) in the amount of $5,000.00, individually and respectively, from each defendant for each violation that occurred.

*Mark A. Byrd* 14222

Mark A. Byrd 142221
Bullock Corr. Facility
P.O. Box 5107
Union Springs, AL 36089

9



byrd  
MONTGOMERY Facility  
Box 5107  
ion Springs, AL 36089

MONTGOMERY, AL

Clerk, United States District Court  
MIDDLE DISTRICT OF ALABAMA  
P.O. Box 711  
Montgomery, AL 36101-0711

LEGAL MAIL

(*Exhibit A pg 1*)

DISC: #08-204
BCCF: #08-204

ALABAMA DEPARTMENT OF CORRECTIONS
DISCIPLINARY REPORT

INMATE COPY

H 7 4B

DOC Form 225B (Revised 7/92)

1.  INMATE:  Mark Byrd          CUSTODY:  MED-2     AIS NO:  WM/142221

2.  FACILITY:  __BULLOCK COUNTY CORRECTIONAL FACILITY__

3.  The above named inmate is being charged by Officer Michael Holcey with a violation of Rule #90, specifically, Consumption or Use of, or Under the Influence of Alcohol, Narcotics or Other Intoxicants, from regulation #403, which occurred on or about February 14, 2008, at (time) 8:00 a.m. Location: East Alabama Medical Center Toxicology Department. A hearing on this charge will be held after 24 hours from service.

4.  Circumstances of the violation(s) are as follows: You, inmate Mark Byrd, WM/142221, did test positive for THC (marijuana) according to a confirmation report provided by East Alabama Medical Center Toxicology from a urine sample submitted to Officer Michael Holcey on 2/11/08.

5.  Michael Holcey, Correctional Officer                _Michael Holcey CO_
    Arresting Officer / Typed / Rank                      Arresting Officer / Signature / Rank

6.  I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the 23 day of Feb , 2008 at (time) 12:38 (am/pm).

7.  _Mardis Howard CO_                        _Mark Byrd 142221_
    Serving Officer / Signature / Rank          Inmate's Signature / AIS Number

8.  Witnesses desired?     NO _____      (YES) _Mark Byrd 142221_
                           Inmate's Signature              Inmate's Signature

9.  If yes, list: Ofcr Petsway , Allen K Valser

10. Hearing Date 3-2-08      Time 1:37am           Place MHC Conference room

11. Inmate must be present in Hearing Room. If he is not present explain in detail on additional page and attach.

12. A finding is made that inmate (is/is not) capable of representing himself.

                                          _Willie Byrts, CO_
                                          Signature / Hearing Officer

13. Plea: _Mark Byrd 142221_ Not Guilty _____ Guilty

14. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.

                                          _Willie Byrts_
                                          Signature / Hearing Officer

15. Arresting Officer's testimony (at the hearing): No testimony, other than I followed the correct procedures in collecting urine specimen.

Annex C to AR 403 ( Page 1 of 3 pages )

16.  Inmate's Testimony:  Not guilty, based on improper procedures.
_____
_____
_____                (Exhibit A)
_____                (Page 2)

Witness: _____ N/A _____    Substance of Testimony: _____
_____

Witness: _____ N/A _____    Substance of Testimony: _____
_____

Witness: _____ N/A _____    Substance of Testimony: _____
_____

17.  The Inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are attached.

                                 _Willie Byrd, CO_
                                 Signature / Hearing Officer

18.  The Following witnesses were not called        -        reason not called
     1. _____ N/A _____        _____
     2. _____        _____
     3. _____        _____

19.  After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
     The Hearing Officer finds that :  On 2/14/08, at approximately 8:00 a.m., at East Alabama
     Medical Center Toxicology Department, inmate Mark Byrd, WM/14221, did test positive
     for THC (marijuana) according to a confirmation report provided by East Alabama
     Medical Center Toxicology from a urine sample he submitted to Officer Michael
     Holcey on 2/11/08.

20.  Basis for Finding of Fact:  The hearing officer finds inmate Byrd guilty of testing posi-
     tive for THC (marijuana) based on the confimation from the Bullock County Correc-
     tional Facility Drug Laboratory and the East Alabama Medical Center Toxicology
     Laboratory.

21.  Hearing Officer's Decision:        __✓__ Guilty        __✓__ Major
                                        _____ Not Guilty        _____ Minor

22.  Recommendation of Hearing Officer:  45 days loss of store, visiting, phone use privileges,
     remove 6 months Good Time, and confine to Segregation for 45 days.

                                 _Willie Byrd, CO_
                                 Signature / Hearing Officer

                                 WILLIE BYRD, CORRECTIONAL OFFICER
                                 Typed Name and Title

23.  Warden's Action – Date  3-7-08
     Approved _____
     Disapproved
     Other (specify) _____

     Reason if more then 30 calendar days delay in action.  _____
     _____

25.  I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above
     Named inmate on this the 8TH day of MARCH 2008, at (time) 12:20 a.m./pm).

_Napoleon Floyd CO_                 _Mark Byrd 14222_
Signature / Serving Officer / Title    Inmate's Signature and AIS Number
                                       Annex C of AR 403 (page 2 of 3 pages)

*Exhibit B*

# forensic toxicology lab

east alabama medical center • 121 north 20th street, bldg 17 • opelika, al • 36801

```
Donor ID:          Byrd, Mark              Specimen ID #        041789
Alternate ID:      142221                  Lab. Accession No. 08-02236
Collected Date:    02/11/2008
Received Date:     02/12/2008              Client:  Bullock Correctional
Reported Date/Time: 02/14/2008 08:00 AM             104 Bullock Drive
Reason For Testing: Random                          Union Springs, AL 36089
MRO:               Dr. Ron Cavanaugh       Contact: Officer Pettway  (334) 738-5625
```
--------------------------------------------------------------------------------
### FORENSIC DRUG TESTING RESULTS
### GC/MS1
--------------------------------------------------------------------------------

Marijuana                              **POSITIVE***
    Analysis by GCMS confirmed the presence of :      11-nor-9-carboxy-delta-9-THC: 12 ng/mL
    11-nor-9-carboxy-delta-9-THC is a metabolite of marijuana.

Certifying Scientist: Allen K Valaer


--------------------------------------------------------------------------------
### FINAL REPORT

*Exhibit C*

# Bullock Correctional Facility

Drug Lab

Union Springs, Alabama 36089

Phone: (334)738-5625

**Final Report**   Fax: (334)738-5020

| **Client ID** | 142221 |
| --- | --- |

**Client Name**   BYRD MARK

**Institution Code**   045

**Date Entered**   2/11/08 9:32:17 AM

**WorkList Number**   0

| *Specimen Date* | 2/11/08 9:23:24 AM | *Posted Date* | 2/11/08 11:03:58 AM |
| --- | --- | --- | --- |
| *Date Collected* | 2/11/08 12:48:00 AM | | |
| *Collected By* | OFRC M HOLCEY | | |
| *Posted By* | J PETTWAY | | |

| *Test Name* | *Test Result* | *Test Type* | *Test Date* |
| --- | --- | --- | --- |
| THC | POS. | 1 | 2/11/08 9:23:25 AM |
| MMA | NEG. | 1 | 2/11/08 9:23:25 AM |
| COC | NEG. | 1 | 2/11/08 9:23:25 AM |
| BAR | NEG. | 1 | 2/11/08 9:23:25 AM |

Outcome:

Signed: *Mark Byrd*    *Martin Howard CO*

Results approved by: _____

Copy Rcv'd By Inmate: *Mark Byrd*    AIS# 142221   Date 2-23-08

* POS. = Positive result

* NEG. = Negative result

All positive samples are screened twice

Positive samples are held 7 days

*Exhibit D*

DEPARTMENT OF CORRECTIONS

## CHAIN OF CUSTODY

Name of Institution: __Bullock Correctional Facility__          Inst. Code: __045__
Date: __Feb. 11, 2008__          Time Specimens Delivered: __1:30 AM__

|    | First | Last | Time of Collection | AIS# | Race | Sex (M-F) | Medications (Yes or No) | Dorm Bed |
|----|-------|------|--------------------|------|------|-----------|-------------------------|----------|
| 1  | DAVID | POOLE | 12:56 AM | 255330 | W | M | NO | J1-16A |
| 2  | CHARLES | CAINE | 12:54 AM | 196113 | B | M | NO | J1-16B |
| 3  | WESLEY | KESSLER | 1:00 AM | 251110 | W | M | Yes | J1-17A |
| 4  | ROBERT | JONES | 1:02 AM | 153914 | B | M | N | J1-17B |
| 5  | DANNY | HENDERSON | 1:25 AM | 256259 | W | M | Yes | J1-18A |
| 6  | JOSEPH | HUIE | 1:17 AM | 141388 | W | M | NO | J1-18B |
| 7  | JOHN | DUNCAN | 1:23 AM | 180841 | W | M | NO | J1-19A |
| 8  | MARIO | WILLIS | 12:59 AM | 254678 | B | M | Yes | J1-19B |
| 9  | NICHOLAS | BURNHAM | 1:16 AM | 254941 | W | M | NO | J1-20A |
| 10 | RICKY | MCQUEEN | 1:15 AM | 244689 | B | M | NO | J1-20B |
| 11 | STEVEN | GARNER | 1:26 AM | 203022 | W | M | NO | J1-21A |
| 12 | REGINALD | BROWN | 12:49 AM | 254496 | B | M | NO | J1-21B |
| 13 | JAMES | THOMPSON | 1:07 AM | 188892 | B | M | NO | J1-22A |
| 14 | RONNIE | WHITE | 12:55 AM | 221696 | W | M | NO | J1-22B |
| 15 | DANNY | HENDRIX | 1:08 AM | 111983 | W | M | NO | J1-23A |
| 16 | JEFFERY | WORMLEY | 1:12 AM | 255439 | B | M | NO | J1-23B |
| 17 | MARK | BYRD | 12:48 AM | 142221 | W | M | Yes | J1-24A |
| 18 | MICHAEL | WOODALL | 1:03 AM | 184733 | W | M | NO | J1-24B |
| 19 | ELDRICK | MCNEAL | 1:25 AM | 254470 | B | M | Yes | J1-25A |
| 20 | DANY | PICKARD | 1:08 AM | 256041 | W | M | Yes | J1-25B |
| 21 | DEDRIONNE | BATTLE | 1:21 AM | 253419 | B | M | NO | J1-26A |
| 22 | TERRY | WHITLEY | 1:22 AM | 254278 | W | M | NO | J1-26B |
| 23 | TONY | COX | 12:50 AM | 165440 | B | M | Yes | J1-27A |
| 24 | BROOK | DAVIS | 1:05 AM | 254572 | B | M | NO | J1-27B |
| 25 | BRYAN | BRELAND | 1:27 AM | 154181 | W | M | Yes | J1-28A |
| 26 | MICHAEL | BUSH | 1:20 AM | 149363 | W | M | Yes | J1-28B |
| 27 | OLIVER | WALKER | 1:06 AM | 150023 | B | M | Yes | J1-29A |
| 28 | HOUSTON | GEORGE | 12:52 AM | 177388 | B | M | NO | J1-29B |
| 29 | BERNARD | EVANS | 12:56 AM | 245866 | B | M | Yes | J1-30A |
| 30 | JOSEPH | WOFFORD | 12:58 AM | 256341 | W | M | NO | J1-30B |
| 31 |  |  |  |  |  |  |  |  |

## OUR INSTITUTION REQUESTS THE ABOVE NAMED INMATE(S) BE DRUG SCREENED AND THE RESULTS OF ALL POSITIVE TESTS BE REPORTED VIA PHONE CALL WITH PAPERWORK TO FOLLOW

There are a total of _____30_____ specimens to be tested.

From: __(The above Inmates)__ To: __Ofcr. M. Holcey__ Date: __Feb. 11, 2008__ Time: __12:46 AM__
From: __Ofcr. Holcey__ To: __Sgt. Shift/Drug Cabinet__ Date: __Feb. 11, 2008__ Time: __1:30 AM__
From: _____ To: _____ Date: _____ Time: _____
From: _____ To: _____ Date: _____ Time: _____
From: _____ To: _____ Date: _____ Time: _____

RETAIN THIS FORM FOR ONE YEAR

ADOC Form 440- December 14, 2005

AR440-January 05, 2006

*Exhibit E*

ALABAMA DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES
## Mental Health Consultation to the Disciplinary Process

**STEP 1: ARRESTING OFFICER**
Offense: #910 Consumption or Use of or Under the ___ Today's Date: 2-21-08
Influence of Alchol, Narcotics or Other Intoxicants
Inmate Name: Mark Byrd ___ AIS# 142221 Institution: BCCF
Is the inmate currently on the mental health caseload?    Yes ☒    No ☐
If NO, did the inmate display any signs of distress during the incident that would require a mental
health referral?    Yes ☐    No ☐
Name of Arresting Officer: Michael Holcey    Shift: 3rd    Date of Incident: 2-14-08

**STEP 2: HEARING OFFICER:**
Hearing officer must refer for mental health consultation if the inmate does not understand the
charge or consequences of the charge.  Also, a mental health consultation is indicated if the inmate
is not able to actively participate in the hearing as suggested by any of the following:

- *Inmate does not know where he is*
- *Inmate does not know the current date*
- *Inmate does not speak coherently*
- *Inmate does not know why he is seeing the hearing officer*
- *Inmate is not appropriately dressed*
- *Inmate's statements are not logical and organized*

Should the inmate be referred for mental health evaluation of competency?    Yes ☐
                                                                            No ☐

Name of Hearing officer: ___    Referral Date: ___

**STEP 3: MENTAL HEALTH STAFF:**
Date consult received: 2/21/08 ___ Date consult returned: 2/21/08
Is the inmate competent to participate in the hearing?    ☒ Yes ☐ No

  If NO, why is the inmate not competent? ___

  ___

  If NO, what treatment will assist the inmate in becoming competent? ___

  ___

Did mental health issues affect inmate's behavior at the time of the charge?    ☒ Yes ☐ No
If YES, describe the issue (s): Inmate suffers c Bipolar diagnosis when
is indicator of depressed moods / Moodswings/anger & behavior
Are there mental health issues to be consider in disposition if found guilty?    ☐ Yes ☒ No
If YES, describe the issue (s) and the relation to the disposition: ___

Will mental health staff be present at the disciplinary hearing to provide input?    ☒ Yes ☐ No
Mental Health Staff Member: Yvonne S. Stinson, MS, MHP    Phone: 834/1738/5625

**STEP 4: REVIEW**
Have the mental health recommendations been considered?    ☐ Yes ☐ No
Hearing Officer: Willie Berto    Date: 3-2-08

| Inmate's Name | AIS # |
|---|---|
| Mark Byrd | 142221 |

Disposition: Inmate Medical Record and Institutional Inmate file
Previous edition is obsolete

Reference: ADOC AR: 623, 626, 632, 633, 635
ADOC Form MH-041 - October 24, 2006

Exhibit F
pg. 1

# Statement

I do not plead guilty or not guilty to the charge. I base my defense on violations of the SOP/Admin Reg that governs the collection, handling and testing of specimens.

At the onset a specimen was taken from me on the date described. I do not dispute that. At that time, two officers handled the specimen, the one that watched me pee and the one sitting at the table checking the AIS numbers and names and putting the specimens in the box. The AIS number was wrong. The officer at the table scratched through the number on the bottle and wrote my number in it's place.

There is only one officer listed on the chain of custody. According to the required documentation no one but Ofcr. Holcey has handled the specimen and that was to place it in the third shift drug box.

There is nothing to show that Ofcr. Pattway got a specimen from the drug box.

I have to assume that the specimen.

Exhibit F
pg 2

after having the seal broken, completely left the institution and traveled all the way to Opelika with someone or more than one person to a place where it was given to God only knows who whereupon a man named Allen Valaer supposedly did some kind of test for confirmation. Now, because of lack of proper required documentation, I have no idea where my specimen is nor who or how many different people have handled it.

I have called Ofer. Pettway and Allen Valaer as witnesses because I have questions that I want them to answer under oath about their qualifications and about the handling and whereabouts of the specimen.

The documentation described herein is required to ensure the integrity of the testing process. Due to the lack of proper procedure being adhered to none of us can be certain who all has had access to the specimen.

Since the procedure was plainly deviated from the test results cannot be reliable enough to be accepted.

Exhibit G

Questions To Ofcr. Pettussy

① Does the 3ʳᵈ shift drug box have a lock on it?

② If so, who all has a key or access to the contents of the box?

③ Why is there no entries on the chain of custody after Ofcr. Holcey placing the speciman in the drug box?

④ Can you explain the way the test works and how you are certified to do the tests?

⑤ Can you tell me the dates, times and persons of everytime the specimen changed hands with absolute certainty?

⑥ Can you tell me where all my specimen has been and where it is now?

Exhibit H
pg. 1

## Questions To Allen Valser

① Please explain the way a test is done.

② What type of certification do you have and how long have you been certified?

③ Would you agree, ~~being~~ being a scientist, that following proper established procedure with any type of lab testing is necessary in order for the results of the tests to be reliable?

④ Would you agree that a deviation from established procedure would render a high probability that the test results could not be accurate?

⑤ What control procedure do you use at your lab?

⑥ Do you have some type of log or chain of custody forms that you use?

Exhibit H
pg. 2

## Questions To Allen Valaer (cont.)

⑦ How do you receive specimens from Bullock?

⑧ Where is my specimen now?

⑨ About how many specimens do you test a day?

⑩ Is 12ng a substantial amount?

⑪ Does a body or some types of meds, namely, lithium, indaral, Celexa, Triavil and ibuprofen, ever render a THC positive result of 12ng?

⑫ As a forensic scientist would you agree that documentation of a strict chain of custody in handling evidence is crucial?

⑬ Did you handle my specimen?

⑭ Why did you not sign the chain of custody sheet?

Exhibit I

Questions To Ofcr. Holcey

① Did you watch me pee or were you the Ofcr. at the table?

② Who was the other officer?

③ Where is the 3rd shift drug box?

④ Does it have a lock on it?

⑤ Who all has a key to the lock?

Exhibit J
pg 1

Document Name: DOC Mainframe T709

_____ CDINC   INMATE DISPLAY   26/FEB/2008  ** PRODUCTION **
AIS: 00142221B   BYRD, MARK ALAN          R/S: WM   DOB: ███████
INST: 045 - BULLOCK CORRECTIONAL FACILITY        DORM: DP
OFF: 103C - BURGLARY III                  NCIC OFF: 2299

1. ADMIT    DT: 02/19/2004 08 COMMIT CNTY : 39 LAUD      MENTAL HEALTH: MH-5
2. RELEASE  DT: 08/18/2006 23-ACT 754 OR PROBATION      JAIL CREDIT : 2795
3. SENTENCE DT: 07/27/2007          STAT CODE   : 48
4. LONG RLS DT: 11/26/2014   TIME SERVED : 008Y04M04D   YOUTH OFF  : A
5. MIN RLS  DT: 09/01/2009   DEAD TIME  : 000Y00M00D   PR INC LOC  : 00
6.              TOT GT REC'D: 001Y05M13D   PRIM JURIS  : 0
7. RECAPTURE DT:          TOT GT RVK'D: 000Y00M00D   SECURITY LVL : 4
8. READMIT  DT: 07/27/2007     GT BALANCE : 001Y05M13D   446 SENT/SERV: Y Y
9. RETRO CIT DT:          TOTAL TERM : 015Y00M00D   TRANSFER CNT : 17
10. GEN PROG  DT: 12/06/2008          DISCIP   CNT : 5
11. TOLL    DT:          SERVING CASE: 2003 000417   DET/WAR  CNT : 2
12. 446 CLASS DT: 07/27/2007    S I D  NBR : 00980023    ENEMY   CNT : 8
13. COMP    DT: 11/16/2007   R E D  NBR : 000000      SPECIAL   ED : N
14. LST TRAN DT: 02/21/2008   S S N  NBR *: ████████

15. CURR CUST DT: 12/12/2007   CUST CODE  : 22 MED2    CUST RETAIN :
16. PRES  HRG DT:        PRES  PRL DT: 00/0000    PRES  HRG DEC: 00
17. PRIOR HRG DT:        PRIOR PRL DT: 00/0000    PRIOR HRG DEC: 00
    COMMENTS: RVKD CCP 9/27/2007; SAP        *PAGE* ARCH: N

Exhibit J
pg. 2

Document Name: DOC Mainframe T709

** PRODUCTION **

26/FEB/2008     16:43:58     CDDIS     709     045MW          CDDIS04     649
A I S NUMBER : 00142221B     COMMITMENT NAME : BYRD, MARK ALAN

| SEQ # | DATE | RECV | RSN | REVK | TYP | RULE | PNLT | RT DYS | CST-FR | CST-TO |
|---|---|---|---|---|---|---|---|---|---|---|
| 005 | 02/07/2008 | | 00/00/00 | 9 | 64 | 4 | 0000 | 22 | 22 | |
| 004 | 08/02/2006 | | 00/00/00 | 9 | 64 | 4 | 0000 | 15 | 15 | |
| 003 | 12/28/2005 | | 00/00/00 | 9 | 64 | 4 | 0000 | 15 | 15 | |
| 002 | 08/03/2005 | | 00/00/00 | 9 | 57 | 4 | 0000 | 15 | 15 | |
| 001 | 03/09/2005 | | 00/00/00 | 9 | 64 | 4 | 0000 | 25 | 25 | |

END DATA-KEY CDDIS[SEQ#] FOR SEQ# DETAIL