IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2008 JUN 30 A 10:53

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

MARK ALAN BYRD, 142221,
    Plaintiff,

V.                     2:08-CV-244-MHT

WARDEN K. JONES, et al.,
    Defendants.

## RESPONSE TO DEFENDANTS ANSWER

Comes now the plaintiff, Mark Alan Byrd, pre se, and in accordance with this Court's Order of June 9, 2008 (doc. 17), does hereby submit the following response and attached affidavits in regard to the answer and special report of defendants.

## RESPONSE

1) The plaintiff has submitted a verified complaint containing specific facts and incorporates the grounds, legal arguments and exhibits attached thereto as if fully set forth herein.

2) Plaintiff's Constitutional rights, specifically the 14th Amendment, have been violated and he offers the exhibits, affidavits, facts and arguments submitted as proof thereof.

3) The plaintiff submits that defendants Pettway and Valaer did not follow proper procedures in the handling and testing of the urine specimen thereby intentionally creating an unreliable result that triggered the series of events (see Admin Reg 440 and Exhibit D of the complaint). Had proper procedure been followed none of the other events could have occurred.

4) Defendants Ruffin, Byrts and Hulcey committed numerous violations as described in the complaint and attached Affidavit A.

5) Defendant Giles approved the disciplinary in spite of its obvious invalidity thereby approving the improper actions of Valaer, Hulcey, Pettway, Ruffin & Byrts.

6) Defendant Jones is responsible for the overall operation of Bullock prison and he failed to take appropriate action to prevent the violations from occurring even after plaintiff submitted a letter to him making him aware of the problem.

2

# ARGUMENT

Under _Washington V Davis_ 426 US 229, 239 (1976) the main purpose of the Equal Protection Clause is to prevent official misconduct discriminating on the basis of race. An Equal Protection claim can be demonstrated by showing that similarly situated inmates have received preferential treatment and that the discriminatory treatment was based on some Constitutionally protected interest.

The plaintiff has a Constitutionally protected interest in due process and earned good time credit. His due process was violated and his good time revoked in the process. The affidavits of plaintiff (Affidavit C) and others have been submitted to show similarly situated inmates are preferentially treated.

The plaintiff has not stated, as defendants claim, that the mere presence of black people intimidates him. In Affidavit A para. 18 the plaintiff plainly states that the black race is not intimidating to him but racist actions are.

The defendants cite _Withrow V Jones_ 2005 WL 1270902, at *5 (MD Ala May 27, 2005) referring to disciplinary proceedings of someone who tested positive for a controlled substance. The defendants

continue to elude the fact that a big issue is that the test results to begin with are unreliable because proper procedure was not followed. This is what initiated the whole process.

Further, the plaintiff does not allege that he was the subject of a disciplinary hearing because he is white but that discrimination occurred during the testing of the sample and during the disciplinary process. He does not protest the procedures but the manner in which they were carried out.

In McCray V Bennett 467 F. Supp 187 (1978) the Court stated that "it is axiomatic that... the 14th Amendment proscribes more than unfair treatment. It also protects individuals from arbitrary and capricious actions by the government. Prisoners partake of that protection; their treatment must be free from arbitrary and capricious actions of prison officials." The McCray ruling (MD Ala) is very fitting in this case.

In Washington V Davis, supra, the Supreme Court stated that an "invidious discriminatory purpose may often be inferred from the totality of the relevant facts." When all of the facts of this case are taken as a whole the discriminatory purpose of the defendants becomes clear. The totality of the actions of the defendants not only had a disparate impact but were also purposefully undertaken.

There must have been some reason that the plaintiff's rights were violated and the plaintiff asserts that it was discrimination. The defendants cannot provide a non-discriminatory reason because there is NO justifiable reason for violating anyone's Constitutional rights.

It is feasable to note that in accordance with Pugh v Locke 406 F.Supp. 318 (MDAla 1976) the Alabama prisons were ordered to institute immediately an affirmative hiring program to designed to reduce the racial disparity between the staff and inmate population. At that time 14% of the staff was black and discrimination against blacks was a problem. Somewhere along the way that racial disparity was well overcome and greatly surpassed at Bullock and as a result discrimination against whites has become a problem.

The defendants have offended the Constitution and the integrity for which it stands. The plaintiff presents a prima facia case of discrimination and there exists no non-discriminatory excuse for the defendant's actions.

A habeas corpus action is pending in the Bullock County Circuit Court (Case No. cv-08-21-60)

relating to the actual validity of the disciplinary and due process violations. At such time a proper ruling is made there the plaintiff plans to properly address the issue of the due process violation that was dismissed without prejudice in the complaint.

The plaintiff is being harassed and retaliated against because of this 1983 action and submits a separate affidavit describing the actions (See Affidavit B).

At this point the plaintiff respectfully moves this Honorable Court to Order that the plaintiff be moved back to the Mental Health Unit (RTU) dormitories and that appropriate action be taken against the persons involved. In the alternative the plaintiff asks this Honorable Court to take other action that it deems appropriate to immediately address this issue and minimize the chance for further harassment.

WHEREFORE, premises considered, the plaintiff prays this Honorable Court accept this response and enter an Order whereby having plaintiff immediately reassigned to the RTU dormitories.

Further, the plaintiff prays for any other

relief, general or special, to which he may be entitled although not specifically requested herein.

Respectfully Submitted,

Mark A. Byrd 142221
Mark Alan Byrd  142221
Plaintiff, pro se

## VERIFICATION

I hereby declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge this 17th day of June, 2008.

Mark a. Byrd 142221
Mark Alan Byrd  142221

7

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of June, 2008, I did serve a copy of the listed documents on the attorney for defendants to include the following:

1) Motion To Compel Defendants To Comply With Court Order
2) Motion For Appointment of Counsel
3) Response to Defendant's Answer
4) Affidavit A
5) Affidavit B
6) Affidavit C
7) Affidavit of Jody Ponder
8) Affidavit of John Duncan
9) Affidavit of Timothy Mock

with first-class postage prepaid and properly addressed as follows:

Bettie Carmack
Asst. Attorney General
Civil Division
11 South Union St.
Montgomery, AL 36130

James A. Hoover
420 N. 20th Street, Suite 3400
Birmingham, AL 35203

<u>Mark A. Byrd</u> 142221
Mark Alan Byrd 142221
Plaintiff, Pro se

Office of the Clerk
United States District Court
P.O. Box 711
Montgomery, AL 36101-0711

Mark A. Boyd 142221
BCCF Dorm C2-234
P.o. Box 5107
Union Springs, AL 36089



IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARK ALAN BYRD, 142271,
      Plaintiff,

V.                                    2:08-CV-244-MHT

WARDEN K. JONES, et al.,
      Defendants.

## AFFIDAVIT A

1) My name is Mark Alan Byrd, 142271, and I am the plaintiff in this case. I am confined at Bullock Corr. Facility, P.O. Box 5107, Union Springs, AL 36089. I am over 21 years of age.

2) I wish to assert that there is no grievance procedure at this institution that inmates may use to address issues of racial discrimination.

3) There is no question that flagrant disregard for my due process rights occurred during the disciplinary process.

4) Not only was due process violated but also the

provisions of Admin. Regs. 403 and 440.

5) In the special report and answer documents of importance were omitted by the defendants although the Court previously ordered them to be included (doc. 5, pg 2, para 3). These include copies of Admin Regs 403 and 440, my psychiatric evaluation as to the date of the incident and hearing, and complete copies (front and back) of the completed disciplinary report and the synopsis of the hearing.

6) The defendants are sued in their individual capacities. The affirmative defenses do not apply.

7) My Constitutional rights have been violated as evidenced by my allegations and documents submitted in my verified complaint.

8) My urine specimen was improperly handled and tested by defendants Pettway and Valaer. They did not sign the chain of custody sheet.

9) Defendant Pettway gave an affidavit in regard to the selection process for the test. That process is not an issue. He did not address his actions as alleged in the complaint.

2

10) Defendant Valaer gave an affidavit stating that he did not work for the state and that he had nothing to do with D.O.C. procedures. Although technically he does not work for the state he is a contracted person and should therefore be aware of the proper procedure to follow in dealing with the state.

11) I dispute the affidavit of Defendant Jones wherein he states that my disciplinary hearing was conducted in accordance with Admin Reg 403 with no due process violations. Admin Regs 403 and 440, along with due process, were violated as evidenced by the facts and documents presented in the verified complaint.

12) Defendant Jones was made aware of the violations via a letter from me prior to the final approval of the disciplinary. Jones is the Warden of the institution and is ultimately responsible for the actions of his subordinates. He has the authority to disapprove any disciplinaries. He failed to do so, or to act in any manner, after having been made aware of the situation.

13) Defendant Ruffin has presented a total false statement to this Court. He spent the majority of the hearing inside the room being an active "off-the-record" participant in the hearing. His actions were described in the original verified complaint.

3

There is no "security" provided at disciplinary hearings as Ruffin described. Disciplinary hearings are conducted by an officer and usually, as in my case, an officer is the person charging the offense. No "security" outside doors is needed.

Ruffin is a shift supervisor. He acted aggressively toward me when I rightfully attempted to present my arguments in the hearing. I have seen him act aggressively toward many white inmates but never toward any black inmates. I believe that Ruffin's actions were deliberate with the intent, or result, of discrimination.

14) Defendant Byrts did not conduct the hearing in accordance with Admin Reg 403. He allowed defendant Ruffin to influence the results, proceedings and punishment. There was no evidence or testimony to support his findings. He allowed no witnesses. He did not allow me to give my prepared statement. He stated on the synopsis of the disciplinary hearing that that I did not desire witnesses when the disciplinary report itself, along with the questions I had prepared, indicate otherwise. All of the due process violations and regulation violations are detailed in my verified complaint.

15) Defendant Byrts also states in his affidavit

that there are no white officers assigned to 3rd shift (the shift of the incident) and that overall there is only one white supervisor and two white officers at Bullock prison. This is true. Out of the many facilities under the control of the D.O.C. none come close to being as overwhelmingly staffed by blacks as Bullock.

16) Defendant Giles approved the disciplinary. It is her duty to ensure that no violations occurred during the process. She apparently "rubber stamped" her approval because the violations are apparent on the face of the disciplinary.

17) Defendant Holcey has stated that he did not observe any discrimination during the hearing and that he answered all questions that were asked. That were no questions asked and he did observe the actions of Byrts and Ruffin. Not only did he observe them he backed them up. Holcey is a very large man. His presence with Byrts and Ruffin acting as they did was intimidating and frightening.

18) I am a white male who grew up with and have been incarcerated with many blacks. Their mere presence does not intimidate me or frighten me. Racist actions do.

19) I believe that all defendants involved acted, or failed to act, deliberately to discriminate against me because of my race.

20) Since the filing of this action I have been harassed by the defendants', co-workers and black inmates (See Affidavit B).

21) A black inmate, Robert Jones #153914, was drug tested at the same time I was and tested positive for THC the same as me. Moreso, he has a lengthy disciplinary history and mine is very minimal - this one disciplinary and some minor behavior citations in the last 5 years. Inmate Jones is similarly situated and received preferential treatment. I have attached a separate affidavit in regard to this (See Affidavit C).

22) I submit that there exists genuine issues as to material facts and that the defendants are not entitled to summary judgement.

Respectfully Submitted,

_Mark A. Byrd_ 142221
Mark Alan Byrd 142221
Plaintiff, pro se

## VERIFICATION

I hereby declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge this 17th day of June, 2008.

<u>Mark A. Byrd</u> 142221
Mark Alan Byrd 142221
Plaintiff, pro se

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARK ALAN BYRD, 142221,
      Plaintiff,


    V.                      2:08-CV-244-MHT


WARDEN K. JONES, et al.,
      Defendants.


## AFFIDAVIT B

1) My name is Mark Alan Byrd, 142221, and I am the plaintiff in this case. I am confined at Bullock Corr. Facility, P.O. Box 5107, Union Springs, AL 36089. I am over the age of 21 years.

2) I am the victim of harassment and retaliatory actions by defendants and others because I filed a 1983 claim. There is a causal connection because the adverse actions described herein are directly related to my protected conduct.

3) Bullock prison is made of two separate buildings; the main camp and the mental health unit (RTU).

4) I am a "mental health" status inmate and have been since 2004. I suffer from bipolar disorder with borderline personality disorder traits. I currently take 900mg lithium, 150mg Vistaril, 3mg Risperdal, 20mg Celexa and 20mg Inderal daily.

5) When the incident occurred that triggered the ~~incident~~ disciplinary process in the complaint I was in the main camp. I was experiencing problems with my meds at the time, and was placed in the RTU Segregation Stabilization Unit (S.U.). It is a one man cell where I was monitored and my meds adjusted. This was February of 2008.

6) I stayed in SU for 10 days and was moved to the dorms in the RTU. I was assigned there when the disciplinary hearing occurred. Defendants Ruffin and Byrts are assigned to third shift in the RTU. The other defendants, with the exception of Valaer, are assigned to the main camp. However, due to a shortage of officers, different ones frequently rotate back and forth when they work overtime. Even though it is technically two different units the staff of each one are very familiar with each other and defendant Jones is responsible for the overall operation of both units.

7) I was placed in several classes to learn about

2

supervisor who is black, were waiting. Inmate Ford
made threats to me in front of these three
officers. He was immediately placed in Admin. Seg.
for making threats. About an hour later Sgt. Holmes,
at the direction of Capt. Perkins, placed me in Admin.
Seg. for disorderly conduct. At that time Capt.
Perkins made the statement to me, "You are a
big problem and I will do whatever I can to get
rid of your ass."

11) The next day counselor Collins came to my cell
with my treatment plan and told me that I was doing
good and upgraded my mental health status from SM-3
to SM-2. SM-3 is required to remain in RTU and
SM-2 is transitional from in-patient (SM-3 RTU) to
outpatient (SM-2). SM-2's are eventually moved from
RTU to transitional structure dorms in the main camp.
There is a lengthy list of SM-2's waiting to be moved.

12) I told counselor Collins that I was not ready
for out-patient and noted such when I signed the
treatment plan acknowledging the notification.

13) Inmate Ford and I were served disciplinaries
May 10 for the respective charges. We went to our
disciplinary hearings on May 12, 2008. Inmate Ford
was found guilty and his sanctions were 25 days loss

4

against the wall and searched me. He told me that I needed to watch who I messed with. There were at least 30 other inmates and I was the only one searched.

About 45 minutes later I was close to classification hall and was stopped by defendant Pettway, placed against the wall and searched me.

20) Around this time I became extremely paranoid and voiced my concerns to Mrs. Stinson, Ms. Bates and Ms. Davis, the 3 out-patient mental health counselors. All of them are black. I told them about the comments made and actions by the staff. I told them I was scared to the extent that I had a weapon to protect myself and I had stopped taking my meds because defendant Pettway works in the infirmary. I begged them to please move me back to RTU or at the least to C1 or C4 where I feel safer. So far I'm still in G2.

21) On May 31, around 4PM, Sgt. Scott, a black supervisor, saw me in the hallway and said, "Byrd, they finally got you back over here." I replied, "Yes." He said, "Your ass won't be around long." Knowing Sgt. Scott's reputation this really disturbed me.

22) I saw Dr. Andrews, a psychiatrist, and expressed my concerns. He told me that he had nothing to do with security and strongly encouraged me to take my

meds. I resumed my meds reluctantly.

23) On June 6 I saw counselors Davis and Bates and continued to express my concerns about being hurt or set-up. They told me they would send me a pass for me to come back. I never got one.

24) On June 8 I tried again to see the counselors. Ms. Davis sent an inmate runner into the hall to tell me she would sent a pass. She never did.

25) On June 10 I was allowed to see Ms. Davis. I expressed the same concerns. I told her that it was affecting my mental stability and that I couldn't deal with it. She listened, made notes and told me she would have to talk with Mrs. Stinson (her supervisor) and send for me "around twelvish". She never sent for me.

26) On June 11, I asked to see Mrs. Stinson. She sent an inmate runner to tell me that she would not see me, would not move me and for me not to come back.

27) On June 13, defendant Pettway saw me again coming from the infirmary and loudly said, "There's Byrd. Where you been? I ain't seen you in

8

a while. Have you been hiding?" Again, there were black inmates around him and they all laughed. I never responded but kept walking.

28) During the course of all of this there have been many derrogatory remarks made to me in the hallway and on the yard by black inmates that I do not know but see talking to defendant Pettway and other CO's mentioned herein. These remarks include "Cracker," "Nigger Hater" and other racist labels.

29) I have also expressed concerns that two of my meds, lithium and risperdal, can be dangerous if taken and exposed to extreme heat. The RTU is air conditioned for this purpose. C1 and C4 dorms have two fans to help. At this time my dorm has no fan. It is unbearably hot midday and afternoon and makes me wonder why I'm "strongly encouraged" to take my meds in these extreme conditions.

30) My mental well-being, my freedom and my safety are at high risk.

31) I am convinced that these actions are retaliatory in response to this civil litigation. This campaign of harassment is evident and

disturbs me in regards to my mental stability, my freedom and my safety. I felt safe in RTU and did not have to worry about retaliation or harassment daily.

32) I have every reason to believe, and I do believe, that these and/or similar and/or other harassments and retaliatory actions will continue unless the Court intervenes in a effort to dispel or prevent them.

Respectfully Submitted,

Mark A. Byrd 142221
Mark Alan Byrd 142221
Plaintiff, pro se

VERIFICATION

I hereby declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge this 16th day of June, 2008.

Mark A. Byrd 142221
Mark Alan Byrd 142221
Plaintiff, pro se

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARK ALAN BYRD, 147221,
     Plaintiff,

V.                      2:08-CV-244-MHT

WARDEN K. JONES, et al.,
     Defendants.

## AFFIDAVIT C

1) My name is Mark Byrd, 147221, and I am the plaintiff in this case. I am confined at Bullock Corr. Facility, P.O. Box 5107, Union Springs, AL, 36089. I am over 21 years of age.

2) I have personal knowledge that inmate Robert Jones #153914, a black inmate, allegedly tested positive for THC at Bullock Corr. Facility on the same date and time that I allegedly tested positive.

3) Inmate Jones was afforded substantially lighter and less punishment than I even though he has a prior disciplinary history and I only have this

one disciplinary on my time sheet.

4) Inmate Jones received 30 days loss of store, phone and visitation privileges. I received 45 days loss of store, phone and visitation privileges, confinement to 45 days segregation and 6 months loss of good time.

5) I believe I was discriminated against due to my race during my disciplinary proceeding. Inmate Jones is a similarly situated inmate such as I and he received more favorable treatment.

Respectfully Submitted,

Mark A. Byrd 142221
Mark Alan Byrd 142221
Plaintiff, pro se

VERIFICATION

I hereby declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge this 16th day of June, 2008.

Mark A. Byrd 142221
Mark Alan Byrd 142221
Plaintiff, pro se.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARK ALAN BYRD, 142221,
        Plaintiff,

V.                                    2:08-CV-244-MHT

WARDEN K. JONES, et al.,
        Defendants.

AFFIDAVIT OF JODY PONDER

1) My name is Jody Lynn Ponder, #176915, and I
am an inmate at Bullock Corr. Facility, P.O. Box 5107,
Union Springs, AL 36089. I am over the age of
21 years. I am a white male.

2) On May 30, 2008, I was served a disciplinary
for a dirty urine for THC. On the same date
inmate Eddie Ingram 141469, a black inmate, was
also served a disciplinary for the same offense.

3) We went to our disciplinary hearings at
the same time. This was on June 5, 2008.
I had listed CO Jackie Pettway as a witness.

and prepared questions for him because I felt that the chain of custody on my sample was extremely ineffecient.

4) My hearing was held and Pettway was not present. I was sanctioned with 90 days loss of store, phone and visitation privileges and 45 days disciplinary segregation.

5) I continued to contest the fact that my witness wasn't present. I was sent back to my dorm.

6) About 1½ hours later I was called to the shift office. The same hearing officer, CO Melvin Curry, a black officer, was present. He called Pettway on the phone in front of me and asked him my questions. He wrote the answers, hung up the phone and added that as part of the hearing. Pettway wasn't sworn in plus a finding of guilt and sanctions were already decided prior to Pettway's responses.

7) Inmate Eddie Ingram, 141469, was also found by CO Curry and his sanctions were 45 days loss of store, visitation and phone privileges with 45 days segregation.

8) I have been at Bullock for four years now. I have personally witnessed many instances of racism and discrimination against white inmates that many times includes intimidation by black inmates on behalf of the black staff.

9) I believe I received greater punishment at my disciplinary hearing because I am white.

Respectfully Submitted,

Jody Lynn Ponder 176915
Jody Lynn Ponder, #176915
Bullock Corr. Facility (G2-7B)
P.O. Box 5107
Union Springs, AL 36089


VERIFICATION


I hereby declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge this 19th day of June, 2008.


Jody Lynn Ponder 176915
Jody Lynn Ponder #176915

3

In The United States District Court
Middle District of Alabama
Northern Division

MARK ALAN BYRD, 142221,
        Plaintiff,

    V                                    2:08-cv- 244-MHT

WARDEN K. JONES, et al,
        Defendants.

## AFFIDAVIT OF JOHN DUNCAN

1) My name is John Duncan #180841. I am a white inmate confined at Bullock Corr. Facility, P.O. Box 5107, Union Springs, AL 36089. I am over the age of 21 years.

2) I have been at Bullock for 2 years and during that time I have experienced and witnessed many racist and discriminatory actions by the staff toward white inmates.

3) On a daily basis many officers use the words "Cracker," "White boy," "White Folks" and others when referring to white inmates. Some of the CO's include, but by no means are limited to, Herbert, Curry, Hill, Streeter and Oliver.

4) One CO, Dominique Whitley, is openly closely associated with the Crip gang made up of mostly black inmates. In the past he has used his influence with them to try to control the actions of some white inmates with threats and intimidation.

5) White inmates are constantly harassed with shakedowns at all hours. Black inmates, with the exception of a few, do not experience this.

6) The staff allows the black Muslims to openly display "religious" material directed to breed dislike for whites.

7) The common phrase here, "A white man don't stand a chance a Bullock." Discrimination and racism is so open that even some of the black inmates comment about how bad it is.

John Duncan 180841

## VERIFICATION

I hereby declare that the foregoing is true and correct to the best of my knowledge this 23rd day of June, 2008. I declare this under the penalty of perjury.

John Duncan 180841

2

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARK ALAN BYRD, 147221,
    Petitioner,

V.                    2:08-CV-244-MHT

WARDEN K. JONES, et al.,
    Defendants.

## AFFIDAVIT OF TIMOTHY MOCK

1) My name is Timothy Mock #200868. I am a white inmate at Bullock Corr. Facility, P.O. Box 5107, Union Springs, AL 36089. I am over the age of 21 years.

2) I have been at Bullock for 10 years and I have witnessed many instances of racist or discriminatory behavior against white inmates.

3) Many times there is mandatory yard call at 7AM for all inmates so that the dorms can be cleaned. It is common for CO's Howard and Fitzpatrick (from 3rd shift) to allow black inmates to remain asleep and awaken white inmates for the yard call

4) I have heard CO's Herbert, Curry, Whitley, Hill, Streeter and Oliver regularly use the terms "white boy" and "Cracker" along with other racial slurs when addressing white inmates.

5) I see CO Streeter (the small one) come into my dorm (c3) many times flashing gang signs and being openly associated with the Crip gang.

6) It is common for CO's to allow the black line servers in the chow hall to give larger portions of food to other black inmates. If the whites complain they are told to shut up.

7) White inmates are regularly "shook down" and threatened with segregation.

8) Discrimination and racism is rampant at Bullock.

_Timothy Mock_
Timothy Mock #200868

VERIFICATION

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge this 23rd day of June, 2008.

_Timothy Mock_
Timothy Mock 200868

2